UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

       Plaintiff/Respondent,

v.

Gary Michael Kliebert,

       Defendant/Petitioner.

_____/

Criminal Case No. 11-20534
Civil Case No. 14-11093

Sean F. Cox
United States District Court Judge

## OPINION & ORDER
## DENYING GARY KLIEBERT'S § 2255 MOTION

This matter comes before the Court on Defendant/Petitioner Gary Michael Kliebert's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed upon him by this Court. The parties have fully briefed the issues and this Court held an evidentiary hearing on May 20, 2015. For the reasons set forth below, the Court shall DENY Kliebert's § 2255 motion.

## BACKGROUND

Kliebert was charged with one count of receipt of child pornography in Criminal Action No. 11-20534. He was represented by retained counsel, Stephen Rabaut.

Kliebert pleaded guilty to the one-count information on October 12, 2011. On March 19, 2012, this Court sentenced him to a term of 240 months imprisonment and imposed a fine of $25,000.00.

While still represented by Rabaut, Kliebert filed a direct appeal, challenging the procedural and substantive reasonableness of his sentence. The United States Court of Appeals for the Sixth Circuit affirmed. *See United States v. Kliebert*, 508 F. App'x 535 (6th Cir. Dec. 18,

2012).

Thereafter, Kliebert retained new counsel, Craig Daly, who filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence on August 20, 2014. (D.E. No. 28). In his motion, Kliebert argues that on the day that law enforcement officers executed a search warrant at his home, he was subjected to a custodial interrogation although he repeatedly asserted his Fifth Amendment right to counsel. He argues that his former counsel failed to present a motion to suppress evidence based on that unlawful conduct, even though he was told about it. Kliebert contends that such a motion would have resulted in the exclusion of the bulk of the Government's evidence against him and that he would not have pleaded guilty absent Rabaut's ineffective assistance.

On June 30, 2014, this Court issued an "Order Granting Government's Motion To Have The Court Waive The Attorney/Client Privilege" (D.E. No. 33) wherein the Court ruled that the attorney client privilege between Kliebert and Rabaut was waived, so that the Government could interview Rabaut, investigate Gary Kliebert's claims, and respond to his § 2255 motion.[1]

On August 20, 2014, the Government filed a response to the motion. (D.E. No. 35). The Government contends that Kliebert is not entitled to habeas relief because he did not actually ask for an attorney and, contrary to his assertions, law enforcement did not disregard any requests to speak to an attorney. The Government also contends that Gary Kliebert never told his prior counsel about having requested an attorney and nevertheless being questioned by officers. While the Government disputes the factual basis of the motion, it agreed that an evidentiary

---

[1]In addition, at the May 20, 2015 evidentiary hearing, Gary Kliebert confirmed on the record that he was waiving the attorney-client privilege so that Rabaut could testify at the evidentiary hearing.

hearing was appropriate, given the divergent factual assertions.

Due to the competing versions of the underlying facts, this Court held an evidentiary hearing on May 20, 2015. At that hearing, Gary Kliebert presented the following witnesses: Martha Kliebert, Gary Kliebert, and Stephen Rabaut, who were all cross-examined by the Government. The Government presented one witness, Special Agent Daniel Ghareeb, who was also cross-examined by defense counsel.

Martha Kliebert testified that her husband told her that he had asked for a lawyer while he was being interviewed. She testified that she was not present during any interviews with law enforcement and, therefore, she does not know if what he told her is true. She also conceded that her husband has not been truthful about matters in the past, including the child pornography he collected and possessed in their home. As a result, Martha Kliebert's testimony is of little value to the Court.

Gary Kliebert testified that on the date of the events at issue, March 17, 2011, he told law enforcement officers that he wanted a lawyer at least three different times and that, despite his requests, law enforcement officers continued to interrogate him. He further testified that he told his retained attorney, Stephen Rabaut, that had occurred. Gary Kliebert, however, *was not a credible witness*. To the contrary, throughout his testimony he was inconsistent, evasive, argumentative, and refused to give responsive answers to very simple questions. Gary Kliebert also demonstrated his propensity to lie under oath numerous times during his testimony at the evidentiary hearing.

Unlike Gary Kliebert, the Court finds both Stephen Rabaut and Special Agent Daniel Ghareeb to be highly credible witnesses.

3

Stephen Rabaut testified that he is an experienced criminal defense attorney, that a criminal defendant invoking his right to counsel is a fundamental issue that is always on his mind as he investigates a case, that he routinely inquires about such facts during his interviews with clients, that he does not recall being apprised of any such facts, and that if he had been told that Kliebert had invoked his right to counsel he would have investigated the claim and filed a motion to suppress.

Special Agent Ghareeb testified that the only time that Kliebert ever mentioned an attorney on March 17, 2011 was when Kliebert asked him if he should get an attorney.  He testified that he told Kliebert he could not give him legal advice and that he would not interview him if he wanted an attorney.  Agent Ghareeb testified that Kliebert never mentioned an attorney again in any manner that day and that he was very cooperative and assisted the officers with their investigation.

The following exhibits were admitted into evidence at the evidentiary hearing: 1) a signed Statement of Rights and Wavier form, dated March 17, 2011 (Govt.'s Ex. 1); 2) a signed Sworn Statement, dated March 17, 2011 (Govt.'s Ex. 2); 3) a signed "Consent to Assume Online Identity" form, dated March 17, 2011 (Govt.'s Ex. 3); 4) another signed form regarding consent to assume online identity, dated March 17, 2011 (Govt.'s Ex. 4); 5) a signed "Polygraph Waiver" form, dated March 17, 2011 (Govt.'s Ex. 5); 6) a signed "Polygraph Examination Statement of Consent" form, dated March 17, 2011 (Govt.'s Ex. 6); and 7) a signed "Polygraph Examination Warning of Rights and Consent To Speak" form, dated March 17, 2011 (Govt.'s Ex. 7).

The matter is now in a posture for this Court to "determine the issues and make findings of fact and conclusions of law with respect thereto."  28 U.S.C. § 2255(b).

4

## FINDINGS OF FACT

Having considered the files and records of the case, and after consideration of the testimony and exhibits presented at trial, drawing inferences as appropriate, weighing the evidence and assessing the credibility of the witnesses, the Court finds the following facts.

Martha Kliebert is married to Gary Michael Kliebert.[2]  In March of 2011, Gary and Martha lived together in a home in Washington Township, Michigan.

Gary is an intelligent and educated man.  After graduating from high school, Gary earned both a bachelor's degree and a masters degree.   Prior to retiring, Gary worked as a special education teacher for approximately thirty years.

The Department of Homeland Security received investigative leads related to a child pornography website called "www.liberalmorality.com."  One of their investigative leads related to an internet protocol address registered to Martha and a federal search warrant was obtained for the Kliebert's home.

On March 17, 2011, federal agents came to the house to execute the search warrant.  The execution of the search warrant was conducted by Daniel Ghareeb, a Special Agent with the Department of Homeland Security, along with other law enforcement officers.

The officers arrived at the house early in the morning.  No one was home when the officers began the search.   Martha had left for work and Gary had gone to his adult daughter's home to babysit his grandchildren.

The officers made a forced entry at the home.  An initial search of the home was

---

[2]In this "Findings of Fact" section of the Opinion, the Court will refer to Martha and Gary Kliebert by their first names.

conducted and a desktop computer was found in the home.

Approximately three hours after the search had begun, Gary came back to the house. He pulled up in the driveway in his truck.  Agent Ghareeb and another agent, Renaldo Franklin, approached Gary and instructed him to put his hands on the vehicle.  At least one of the officers had a gun drawn at this time for purposes of officer safety.  The agents handcuffed Gary, and then searched his person for weapons.

Gary was then taken into the kitchen of the home and the three men (Gary, Agent Ghareeb,  and Agent Franklin) sat together at the kitchen table.  The handcuffs were taken off of Gary.  Agent Ghareeb told Gary that the officers were at the house because they had a search warrant to search for child pornography.  Agent Ghareeb told Gary that he would like to interview Gary.

Gary then asked Agent Ghareeb, in the form of a question, either "should I get a lawyer?" or "do I need a lawyer?"  Agent Ghareeb told Gary that he could not give him legal advice and that the decision was up to Gary.  Agent Ghareeb stated that if Gary wanted a lawyer, the agents would not interview Gary. Agent Ghareeb told Gary that if he did not wish to speak to them, the agents would continue to search the home.

Agent Ghareeb told Gary that an interview would allow him to tell his side of the story. Agent Ghareeb also told Gary that if he talked to the agents and was truthful with them, he would relay that information to the prosecutor.  Agent Ghareeb did not make any promises or threats to Gary.

Gary was then advised of his *Miranda* rights by the agents.

Believing the agents would continue to search his home, that they would "break the

house up," and would find his child pornography that was concealed in the basement bookcase, Gary chose to cooperate with law enforcement officers.

Gary initialed, on a Statement of Rights Form, that he understood each of his rights. (Govt.'s Ex. 1). Gary understood his rights and signed a waiver that stated, in pertinent part, "I have had the above statement of my rights read and explained to me and I fully understand these rights. I waive them freely and voluntarily, without threat or intimidation and without any promise of reward or immunity." (*Id*.).

Gary never again mentioned the subject of a lawyer, in any manner, after asking that initial question to Agent Ghareeb at the kitchen table.

Agent Ghareeb, who has been employed by the Department of Homeland Security since 2007, understands the significance of a suspect stating that he or she wants a lawyer. Agent Ghareeb credibly testified that he would not have interviewed or questioned Gary if Gary had stated that he wanted a lawyer.

Gary fully cooperated with the law enforcement officers. Although he initially denied that he had looked at any child pornography, he later admitted that he viewed child pornography on a daily basis and that he had last viewed it the previous day. Gary told the agents that they were not going to find anything on the desktop computer they had found in the home and showed them a concealed compartment inside a bookcase in the basement where he stored another computer and his child pornography collection.[3]

---

[3]"A forensic examination of Kliebert's electronic media" found "the equivalent of 872,138 images of rape, abuse, and sexual exploitation of children." *United States v. Kliebert*, 508 F. App'x 535 (6th Cir. Dec. 18, 2012).

7

Gary then knowingly and voluntarily consented to allow the agents to assume his online identity, signed two consent forms so indicating (Govt. Exs. 3 & 4), and gave the agents his passwords and other private information so that they could access the child pornography on his computer.

Agent Ghareeb testified that when interviewing suspects he allows them to provide a written statement if they wish to do so. He testified that most suspects decline to give a written statement but that Gary indicated that he wanted to provide a written statement and that he voluntarily gave one. (*See* Govt.'s Ex. 2). In that statement, Gary stated, among other things, that he "would like to explain that the psychological impact of being molested myself in no way excuses this behavior but more than likely will help to explain the 'whys' of such behavior." (*Id.* at 1).

Agent Ghareeb was concerned that Gary may have had sexual contact with children and asked Gary if he would take a polygraph examination to explore that subject. Gary agreed and signed two forms consenting to take a polygraph examination. (Govt.'s Ex. 6 & 7). The polygraph examination was given at the police station in Taylor, Michigan. During the polygraph examination, Gary initially stated that he had never touched a child in a sexual manner. After being advised that he was failing the polygraph test, however, Gary then admitted that he had previously touched his minor niece in a sexual manner.

Gary was released and went home at approximately 6:00 p.m. on March 17, 2011. He was not arrested that day.

Gary retained an experienced criminal defense attorney, Stephen Rabaut, to defend him in this case. Rabaut has been a licensed attorney since 1980. He practices exclusively in

8

criminal defense and forfeiture cases and practices in both state and federal courts.  Rabaut is on

the Criminal Justice Act Panel and he is appointed to defend indigent criminal defendants in the

United States District Court for the Eastern District of Michigan.

From his experience, Rabaut understands that a criminal defendant invoking his right to

counsel is a fundamental issue that should always be looked into.  He testified that issue is

always on his radar as he investigates a new case.  As a matter of practice, he routinely

inquires about such facts and circumstances during his interviews with clients, even when clients

do not bring the issue up.  Rabaut extensively interviewed Gary, on several occasions.  Rabaut

was not told that Gary had ever requested an attorney on March 17, 2011.

Rabaut credibly testified that, if he had been told that Gary had invoked his right to

counsel, he would have investigated the claim and filed a motion to suppress on Gary's behalf.

## ANALYSIS AND CONCLUSIONS OF LAW

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence

was imposed in violation of the Constitution or laws of the United States, that the court was

without jurisdiction to impose such sentence, that the sentence was in excess of the maximum

authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255.  To

prevail under § 2255, "a petitioner must demonstrate the existence of an error of constitutional

magnitude which had a substantial and injurious effect or influence on the guilty plea" at issue.

*Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003). Relief is warranted only where a

petitioner has shown a fundamental defect which inherently results in a complete miscarriage of

justice. *Id.*

The standard that governs claims of ineffective assistance of counsel was summarized in

*Griffin*:

> To prevail on a claim of ineffective assistance of counsel, a habeas petitioner
> must establish two elements: (1) counsel's performance fell below an objective
> standard of reasonableness, and (2) there is a reasonable probability that, but for
> the deficiency, the outcome of the proceedings would have been different.
> *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674
> (1984). "A reasonable probability is a probability sufficient to undermine
> confidence in the outcome." *Id.* The *Strickland* standard applies to guilty pleas as
> well. *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

*Griffin*, 330 F.3d at 736.   A court considering a claim of ineffective assistance must "indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." *Strickland*, 466 U.S. at 689.

In order to satisfy the prejudice requirement, the defendant must show that there is a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would

have insisted on going to trial.  *Griffin,* 330 F.3d at 737.

Kliebert must prove his allegation that Rabaut provided ineffective assistance of counsel

to him by a preponderance of the evidence.  *Pough v. United States*, 442 F.3d 959, 964 (6th Cir.

2006).

In this case, Kliebert claims that his counsel's performance fell below an objective

standard of reasonableness because: 1) on March 17, 2011, he was subjected to a custodial

interrogation although he repeatedly asserted his Fifth Amendment right to counsel; and 2)

Rabaut failed to file a motion to suppress evidence based on that unlawful conduct, even though

Kliebert apprised Rabaut about those facts and circumstances.

Thus, the success of Kliebert's claim requires him to establish, by a preponderance of the

evidence, that: 1) he actually invoked his right to counsel during questioning by law

10

enforcement; 2) the law enforcement officers ignored his request for counsel; *and* 3) he told Rabaut about those events and Rabaut failed to file a motion to suppress on his behalf. The failure to establish any of the above is fatal to Kliebert's claim.

Based on the evidence and testimony presented at the May 20, 2015 evidentiary hearing, the Court finds that Kliebert *did not* invoke his right to counsel at any time on March 17, 2011. The Court also finds that Rabaut was never apprised of Kliebert's allegation that he had invoked his right to counsel on May 17, 2011 but was nevertheless questioned. Accordingly, Kliebert cannot establish that Rabaut provided ineffective assistance of counsel by failing to file a motion to suppress Gary's statements.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court recognized that the Fifth Amendment grants suspects in custody "[the] privilege against self-incrimination and [the] right to retained or appointed counsel." *Id*. at 475. The "prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id*. at 444. "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* A defendant's waiver of his *Miranda* rights is considered valid if it is voluntary, knowing, and intelligent. *Id.*

In *Davis v. United States*, 512 U.S. 452 (1994), the Supreme Court clarified what a suspect like Kliebert must do to actually invoke his right to have counsel present at an interrogation. As the Sixth Circuit has explained:

The *Davis* Court established an "objective inquiry"—the suspect "must

11

unambiguously request counsel." *Id.* at 459, 114 S.Ct. 2350. Importantly, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning." *Id.*

*Bush v. Warden, Southern Ohio Corr. Fac.*, 573 F. App'x 503, 511 (6th Cir. 2014). The *Davis*

Court further stated:

> [W]e decline to adopt a rule requiring officers to ask clarifying questions. If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him.
>
> To recapitulate: We held in *Miranda* that a suspect is entitled to the assistance of counsel during custodial interrogation even though the Constitution does not provide for such assistance. We held in *Edwards* that if the suspect invokes the right to counsel at any time, the police must immediately cease questioning him until an attorney is present. But we are unwilling to create a third layer of prophylaxis to prevent police questioning when the suspect might want a lawyer. Unless the suspect actually requests an attorney, questioning may continue.

*Davis*, 512 U.S. at 461-62.

    In *Davis*, the Supreme Court found that the defendant's statement, "Maybe I should talk to a lawyer," was not an unambiguous request for counsel.  Relying on *Davis*, the Sixth Circuit and other courts have found that the following statements *are not* unambiguous requests for counsel that require law enforcement officers to cease questioning a suspect:  "I think I should talk to a lawyer, what do you think?" *United States v. Delaney*, 443 F. App'x 122, (6th Cir. 2011); "Do I need a lawyer?" and "Do you think I need a lawyer?" *United States v. Ogbuehi*, 18 F.3d 807, 813 (9th Cir. 1994); "Do you think I need a lawyer?" *Diaz v. Senknowski*, 76 F.3d 61, 65 (2nd Cir. 1996); and "[i]t would be nice to have an attorney," *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994).

12

Based on the testimony and evidence presented at the evidentiary hearing, this Court finds that the only time that Kliebert ever mentioned a lawyer to law enforcement officers on March 17, 2011 is when, while sitting at the kitchen table, he asked Agent Ghareeb either "should I get a lawyer?" or "do I need a lawyer?"  That statement, made in the form of a question, was not an unambiguous request for counsel.  Moreover, while he is not required to ask any clarifying questions, in response to that question, Agent Ghareeb responded by telling Kliebert that he could not give him legal advice, that the decision was up to Kliebert, and that if Kliebert wanted a lawyer he would not be interviewed.

Kliebert then, knowingly and voluntarily, waived his *Miranda* rights and: 1) agreed to be interviewed by Agent Ghareeb and signed a written waiver of his rights; 2) told the agents where his child pornography collection was hidden in the basement; 3) gave the agents his passwords and consent to assume his online identity so that they could access the child pornography on his computers; 4) provided a written statement; and 5) agreed to take a polygraph examination.

Thus, contrary to Kliebert's allegations, the agents did not violate Kliebert's constitutional rights by interrogating him after he invoked his right to counsel.

After being released on March 17, 2011, Kliebert retained Rabaut to represent him in this action.  This Court finds that Rabaut was never apprised of Kliebert's allegation that he had invoked his right to counsel on May 17, 2011 but was nevertheless questioned.  As a result, Rabaut's performance did not fall below an objective standard of reasonableness because he was not aware of any alleged basis to file a motion to suppress Kliebert's statements.

Accordingly, Kliebert cannot establish that Rabaut provided ineffective assistance of counsel and Kliebert is not entitled to relief under § 2255.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Kliebert's § 2255 Motion is

DENIED.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  September 4, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on
September 4, 2015, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager

14