**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

United States of America,

      Plaintiff,

v.                                                             Criminal Case No.  11-20534

Gary Kliebert,                                          Sean F. Cox
                                                    United States District Court Judge

      Defendant.
_____/

**OPINION & ORDER**
**DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

In this criminal action, Defendant Gary Kliebert ("Defendant") was convicted of a child

pornography offense and was sentenced to a term of 20 years of imprisonment.  The matter is

before the Court on Defendant's Motion for Compassionate Release under 18 U.S.C. §

3582(c)(1)(A), which is based upon concerns about the ongoing novel coronavirus pandemic

("COVID-19") and asks the Court to allow Defendant to serve the remainder of his sentence at

home.  The Court concludes that a hearing is not warranted and orders that the motion will be

decided based upon the briefs.  As explained below, the Court shall DENY the motion.

**BACKGROUND**

In this criminal case, Defendant pleaded guilty to Receipt of Child Pornography, in

violation of 18 U.S.C. § 2252A(a)(2).  This Court sentenced Defendant to a term of 20 years of

imprisonment.  (*See* ECF No. 21, Judgment).

This Court imposed sentence upon Defendant on March 9, 2012.  Before doing

so, this Court carefully considered the applicable § 3553(a) factors as they relate to Defendant

and discussed them on the record:

      On October 12th of last year, 2011, you pled guilty to Count One, receipt

of child pornography.  And at that time you told me that from on or about March 19, 2010 through and   including March 17, 2011 that you used the internet to download and collect images of child sexually abusive materials, specifically images and videos of real children engaged in inappropriate exhibition of genitals or pubic area, and also engaged in sexually explicit conduct, and that you had received and collected over a million images and videos of child pornography.

   We learned through the presentence report that the Italian state police, their pedophilia operation, investigated certain leads and shared these leads with the Department of Homeland Security.  And in April of 2010, Homeland Security agents obtained and executed a federal search warrant on a child pornography website which was called -- or a cite, words to the effect of liberal morality.com.

        Evidence obtained from that website included web access to logs tracking activity.  Subsequent investigation in August 2010 led to your address, an internet protocol registered to Martha Kliebert as a possible source of child pornography.

        Further investigation and surveillance of the home resulted in March of 2011 the Homeland Security agents executing a search warrant.  You weren't there.  They obtained your consent and arranged for your return to the home.

        You subsequently consented to be interviewed by the agents.  And you told them that you frequently downloaded child pornography and led the agents to a hidden location underneath a trap door in your basement where you had stored two laptop computers, an external hard drive, a wireless router, money and letters.

        And you told the agents that you had been looking at child pornography for approximately eight years and it got worse after you retired.  You told the agents that you viewed child pornography involving children as young as three or four years of age, that you were -- that your preference was for children 13 to 14.  And further investigation of -- forensic investigation of one laptop computer revealed 334 images of child pornography and very, very troubling images of child pornography involving bestiality, images of child pornography involving bondage, and as we know through information received, children being tortured, again a videotape of children involved in acts with animals; very, very disturbing and troubling.

        I can't describe the term right now, what you would call this material that was recovered by the agents.  And again, this is videos of children being tortured, children being forced to engage in certain sexual acts with animals, incredibly troubling, disgusting material.

        And I'm not sure -- I guess the amount of materials was over 870,000, but I am not sure that all of the amount of materials has actually been accounted for.  Coupled with this  -- and I'm not going to focus on this because this is not the nature of the case, but it is related.  Relevant conduct is these acts of molesting your niece; troubling, troubling behavior.  Multiple acts of molesting your niece over a period of time.

        So I've considered again -- the purpose of the sentence is that the Court will impose a sentence -- under 18 U.S.C. Section 3553(a), the Court will impose

a sentence sufficient but not greater than necessary to comply with the purposes set forth in the statute.

And of course the Court has considered the nature and circumstances of this offense which I have just done so and put on the record here; very, very troubling, disturbing, disgusting circumstances involving this offense. Troubling. Again, I keep saying the word "troubling," acts that have been perpetrated on real children, real children. And I'm going to discuss these acts with the children later on in the course of imposing the sentence that I'm going to impose upon you right now.

I've considered your history and your characteristics. You're 62. Your parents were married. You are one of nine children. You assert that you and your sisters were the victims of sexual abuse, yet your sister in her tatement, which is part of the materials provided to me, states that she does not believe you are or were the victim of sexual abuse. She was, but she does not believe that you were.

You've had a long marriage. Your wife is a successful individual. You're a successful individual. You have a master's degree. Your wife is a director of special education for a school district. Your two children have done well. So I have considered your history, your characteristics.

I further note that you have obvious mental health issues and you don't appear to have any substance abuse issues. Again, you are very well educated. You've had a successful career as an educator. So I have considered your history and your characteristics in the sentence that I am going to impose.

I've considered the need for the sentence imposed to reflect the seriousness of the offense. And in my mind, this is a very, very serious, disturbing offense that has serious consequences for our community, our society.

I've considered the need for the sentence imposed to promote respect for the law, and again, promote -- provide just punishment for this offense. And again, my purpose is to provide just punishment for this offense.

I've considered the need for the sentence imposed to afford adequate deterrence to criminal conduct and to protect the public from further crimes by you. And I view you as being a threat to the public, a continuing threat to the public, in particular, young children.

I've considered the need to provide you with needed educational or vocational training, medical care or other correctional treatment in the most effective manner. And I will deal with that issue later on in this actual sentence that I do impose upon you.

I've considered the kinds of sentences available. There is a mandatory minimum of five years. The max is 20 years. The guidelines, which are, of course, advisory, are 16 months to 210 months.

I note that Mr. Rabaut has requested a variance to eight years. And I do note that the government is requesting an in-guideline sentence of 17 years. Probation is not an option. So I have considered the kinds of sentences available and the sentencing range established for this conviction.

And I have considered all the sentences -- excuse me, all the factors under 18 U.S.C. Section 3553(a) in imposing the sentence that I'm going to impose upon you shortly.

Now, I would like to note that I don't think you've been entirely candid during the course of this occurrence, and by "occurrence," I mean, the time of your arrest. You minimized, had covered what had happened to your niece. Finally, you've been forthcoming.

You also created some sort of -- or assert that somehow you may be a sympathetic figure person because of abuse that occurred to you in the past, which again has been thrown into question by your sister's statement that has been provided to all of us, that you were not the victim of abuse as a child, that she and your other sisters were, but not you and your brother.

Now, there's this myth amongst the individuals that receive this pornography and members of the public that somehow there's no victim, no one is hurt by looking at these   materials. And that is such a fallacy. And that belief is just so wrong and it's in and of itself an injustice to the children that are viewed by individuals like you.

I just want to highlight some of the information contained in the different letters that I have received. And these are from mothers and fathers of children that you watched being tortured, raped and forced to perform acts with animals. These are again, the letters from the mothers and the fathers, in fact, the children victims as well that I am going to –  that I would like to make part of this record, because I think it's an important part of this case and the victims in this case, who too often have no voice.

(ECF No. 24, Sentencing Transcript at 28 to 45). This Court then read from various victim impact statements before imposing its sentence. While the Court will not restate them all here, the Court one in particular bears re-stating:

And this is -- and you watched the Vicky series apparently, and this is from one of the real individuals, real children that were used in the Vicky series.

"My name is blank. I'm 19 years old and living every day with the horrible knowledge that someone somewhere is watching the most terrifying moments of my life and taking grotesque pleasure in them.

I am the victim of the worst kind of exploitation, child porn. Unlike other forms of  exploitation, this one is never ending. Every day people are trading and sharing videos of me as a little girl being raped in the most sadistic ways. They don't know me, but they       have seen every part of me. They are being

4

entertained by my shame and pain.

I had no idea the Vicky series, the child porn series taken of me, had been circulated at all until I was 17. My world came crashing down that day, and now, two years later, not much has changed. I wonder if the people I know have seen these images. I wonder if the men I pass in the grocery store have seen them, because the most intimate parts of me are being viewed by thousands of strangers and traded around. I feel out of control. What are they doing when they watch those videos anyway? They are gaining sexual gratification from images of me at ages ten and eleven.

Some nights I have cried myself to sleep thinking of strangers somewhere staring at the computer with images of a naked me on the screen. I have nightmares about it. My paranoia is not without just cause. Some of these perverts have tried to contact me. I will never be able to control over who sees me being raped as a child. It's all out there for the world to see and it can never be removed from the internet.

I only ask that those who have exploited me be brought to justice to hopefully deter some others from following the same, and lessening my shame."

(*Id.* at 41-42).

Defendant is now serving his sentence, which he began serving on April 12, 2012. He is currently being housed at FCI Milan. His projected release date is March 23, 2029.

On October 6, 2020, Defendant filed a *pro se* Motion for Compassionate Release, claiming that he is at risk of the more severe complications from COVID-19, if he were to contract the virus, due to his age and health conditions. (ECF No. 57). Defendant is 71 years old and has chronic kidney disease. Defendant also asserts that his "medical condition is complicated by a history of smoking (14 years), anxiety and depression," as well as PTSD he claims to have incurred from unspecified "childhood trauma." (*Id*. at 8).

The Government agrees that Defendant has exhausted his administrative remedies but opposes the motion on the merits. It argues that even if Defendant has established that his age

and kidney disease constitute extraordinary and compelling circumstances in light of the pandemic, his motion should nevertheless be denied. The Government notes that Defendant has already contracted COVID-19, and experienced no symptoms. It also contends that Defendant still poses a danger to the community and contends that Defendant's "dangerousness is compounded by the fact that he has not participated in sex offender treatment while in prison." (ECF No. 60 at 25). The BOP records filed by the Government reflect that Defendant was offered such treatment while incarcerated but declined it. (ECF No. 61). The Government also argues that Defendant's motion should be denied because a consideration of the § 3553(a) factors weighs against his release.

### ANALYSIS

"The 'compassionate release' provision of 18 U.S.C. § 3582 allows district courts to reduce the sentences of incarcerated persons in 'extraordinary and compelling' circumstances. 18 U.S.C. § 3582(c)(1)(A)." *United States v. Jones*, __ F.3d __, 2020 WL 6817488 at *1 (6th Cir. Nov. 20, 2020).

"An imprisoned person may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release request – whichever is earlier." *Id.* at *4. Here, it is undisputed that Defendant exhausted his administrative remedies, and therefore, the Court may consider Defendant's motion.

The United States Court of Appeals for the Sixth Circuit has recently held that sentence-modification decisions pursuant to § 3582(c)(1)(A) embody a three-step inquiry. "The three-step § 3582(c)(1)(A) test is as follows. At step one, a court must 'find[]' whether 'extraordinary and

compelling reasons warrant' a sentence reduction.  18 U.S.C. § 3582(c)(1)(A)(I).[1]" *Jones, supra*, at *6.

"At step two, a court must 'find[]' whether 'such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission.'" *Id.* (quoting 3582(c)(1)(A)) (emphasis added).  "The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018)." *Id*.  "Thus, if § 1B1.13 is still 'applicable,' courts must 'follow the Commissions's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized.'" *Jones, supra* (citing *Dillon, supra*).  The Sixth Circuit held in *Jones* that § 1B1.13 does not apply "to cases where an imprisoned person files a motion for compassionate release." *Jones, supra*, at * 7.  That means that, '[u]ntil the Sentencing Commission updates § 1B.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id*.   Because Defendant's compassionate release motion was filed by an incarcerated person, this Court "may skip step two of the § 3582(c)(1)(A) inquiry and ha[s] full discretion to define 'extraordinary and compelling' without consulting the policy statement in § 1B1.13." *Jones, supra*, at * 9.

"At step three, '§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case.'" *Jones, supra*, at * 7 (citing *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

---

[1]Or, alternatively, whether the defendant fulfills the requirements of § 3582(c)(1)(A)(ii).

This Court agrees with other courts that have concluded that the COVID-19 pandemic alone does not justify compassionate release to prisoners. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility ..., whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

Here, however, Defendant has stated more than a general concern about contracting the virus. Defendant contends that his age (71) and his kidney disease place him at increased risk for the more severe complications from the virus. But as the Government notes, Defendant has already contracted the virus and was fortunate in that he experienced no symptoms. The Court concludes that Defendant's assertion that he may contact the virus a second time, and may fare worse if that were to occur, is too speculative to constitute extraordinary and compelling circumstances. Thus, the Court concludes that Defendant has not established any extraordinary or compelling circumstances that warrant his release.

This Court further concludes, as a matter of its discretion, that consideration of the § 3553(a) factors weighs against granting compassionate release in this particular case in any event. *See United States v. Ruffin,* 978 F.3d 1000, 1001 (6th Cir. Oct. 26, 2020) (Noting the "statute leaves district courts with discretion to deny relief under a balancing of the sentencing factors in 18 U.S.C. § 3553(a).").

As this Court noted on the record at Defendant's sentencing, the offense in this case was

a very serious and disturbing offense.  Defendant received and collected more than 870,000 images and videos of child pornography.  Images of real children.  Defendant's collection included images of children being raped, being tortured, and being forced to engage in bestiality. The child pornography received and collected by Defendant included images of toddlers as young as three or four years old.  This Court cannot emphasize enough the monestrous nature, the indescribably reprehensible nature, of the images received and collected by Defendant.

As this Court explained at sentencing, there is a serious need for a lengthy sentence in this case in order to deter others from engaging in this conduct, conduct that causes lifelong damage to the victims, as illustrated by the victim impact statements this Court read into the record during sentencing.

Defendant acknowledged, during his sentencing, that he had sexually abused his niece and apologized for the damage he inflicted upon her.  (Sentencing Hrg. Tr., ECF No. 24, at 25). In his pending motion, however, Defendant now falsely claims that he has "no history of contact with minors."  (ECF No. 57 at 19).

Defendant's statements during sentencing about doing all that he can do to receive treatment (*Id*. at 26-28, "I have been in intense therapy for the last year" and "I'm not done yet. I'm not done yet by a long shot," but "I have committed my entire life to getting better . . . I'm willing to do whatever I can . . . I will continue to be committed in that respect.") also proved to be disingenuous.  Defendant was offered, but declined, sex offender treatment while incarcerated.  (ECF No. 61).

Releasing Defendant now, after having served less than half of his sentence, would not reflect the seriousness of his offense, promote respect for the law, or deter others from engaging

in similar conduct.

In sum, consideration of the § 3553(a) factors, including Defendant's history and characteristics, seriousness of the offense, promoting respect for the law, and providing just punishment weigh against Defendant's request for compassionate release.  This Court concludes that Defendant is not an appropriate candidate for the extraordinary remedy of compassionate release.

### CONCLUSION & ORDER

For the reasons set forth above, **IT IS ORDERED** that Defendant's Motion for Compassionate Release is **DENIED.**

**IT IS SO ORDERED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  December 11, 2020

10